# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RONNIE KNEPPER,

    *Plaintiff*,

    v.

VOLVO GROUP NORTH AMERICA,
*et al.*,

    *Defendants*.

Civil Action No. ELH-18-02879

## MEMORANDUM OPINION

This case involves a dispute regarding retirement benefits under employee pension benefit plans governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* *See* ECF 1 ("Complaint"); ECF 12 ("First Amended Complaint"). Plaintiff Ronnie Knepper accrued pension benefits over the course of his 22-year employment with Mack Trucks ("Mack") and its successor, Volvo Group North America ("VGNA" or "Volvo"). Various pension plans were in effect during his employment.

Knepper filed suit against VGNA and The Volvo Group North America Retirement Plan for the alleged failure to calculate accurately and then pay his pension benefits. In the Amended Complaint, he alleged "Denial of Benefits and Rights" under § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (Count I); "Breach of Fiduciary Duty" under § 502(a)(3), 29 U.S.C. § 1132(a)(3) (Count II); and Violation of § 502(c), 29 U.S.C. § 1132(c) (Count III). ECF 12, ¶¶ 76–96.

Defendants previously moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 14. By Memorandum Opinion and Order of September 27, 2019, I granted the

motion to dismiss as to Counts II and III and as to part of Count I. ECF 19; ECF 20.[1] Therefore, only a portion of Count I remains.

As to the remaining portion of Count I, plaintiff asserts two claims. First, he seeks 34 months of retroactive early retirement benefits from each plan, for the period August 1, 2013, when he left employment, through June 1, 2016, when he began receipt of normal retirement benefits. Second, Knepper alleges that, since he began receiving his normal retirement benefits in June 2016, he has been underpaid with regard to his monthly benefit under the Mack Truck-United Auto Workers Pension Plan ("UAW Plan").

Now pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. ECF 41. The motion is supported by a memorandum (ECF 41-2) (collectively, the "Motion") and three exhibits. ECF 41-3 to ECF 41-5. Defendants argue that they are entitled to summary judgment for three reasons. First, they assert that the "two plans properly and reasonably determined that Knepper's claims" for 34-months of retroactive payments "are precluded by Knepper's knowing failure to have filed timely applications for the benefits." ECF 41 at 1. Second, defendants contend that Knepper's claim "for alleged miscalculation of his monthly benefit under the Mack-UAW plan is barred by his failure to have exhausted his administrative remedies." *Id.* at 1-2. Third, defendants assert that "neither VGNA nor the VGNA Plan can be liable for…the Mack/UAW Plan." *Id.* at 2.

Knepper opposes the Motion. ECF 42 (the "Opposition"). Notably, plaintiff does not contest defendants' facts or arguments. Rather, plaintiff contends only that he "acted diligently in pursuing his rights such that the Court should 'equitably toll' internal deadlines set by Defendants

---

[1] I incorporate here the factual summary set forth in ECF 19. In the interest of economy, I need not repeat all the facts.

and missed by Plaintiff." *Id.* at 1. Defendants have replied (ECF 43) and oppose the application of equitable tolling.

Defendants have submitted the Administrative Record, consisting of more than 700 pages. ECF 39; ECF 39-1; ECF 39-2; ECF 39-3. Knepper has filed a supplement to the record. ECF 40.

No hearing is necessary to resolve the Motion. See Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I.     Factual Background[2]

Knepper, who is "over the age of sixty-five" (ECF 12, ¶ 8), began working for Mack in 1972 and retired from VGNA on August 1, 2013, at the age of 62.  *Id.* ¶¶ 9, 20; ECF 39-2 at 5, A.R. 249. Knepper was an employee in the engineering department. ECF 39-3 at 6, A.R. 516 (Affidavit of Taylor Searfoss, Manager of the Pension and Savings Plan Administration for Mack from 1987 to 2009).  During that time, plaintiff accrued pension benefits under various pension plans: Mack's optional Contributory Pension Plan, a part of the Mack Non-Bargaining Unit Employees Plan ("NBE Plan"); the UAW Plan; and the Volvo Group North America Retirement Plan ("VGNA Plan" or "Cash Balance Plan"). ECF 12, ¶¶ 12, 13, 16, 20, 22; ECF 41-2 at 6. Because only the UAW Plan and VGNA Plan are at issue in this Motion, I shall also refer to them collectively as the "Plans."

When Knepper began his employment with Mack in 1972, he was a "non-union employee." ECF 39-3 at 6, A.R. 516. From 1972 until approximately June 1991, he continued to work as a

---

[2] The facts are primarily drawn from the Administrative Record and the supplement, as well as from undisputed allegations in the Amended Complaint.

In this opinion, I cite to the electronic pagination, which does not always correspond to the pagination on the actual document. For cites to the Administrative Record ("A.R."), I have also included the page number for that particular portion of the A.R.

non-union employee.  ECF 39-3 at 10, A.R. 520.  From November 1, 1986 through June 9, 1991, Knepper participated in the Contributory Plan, which was part of the NBE Plan. See ECF 39-1 at 44-45, A.R. 42-43.  In 1991, Knepper's "position was converted to a union represented position, at which time he no longer made contributions to the Contributory Plan and instead became a participant in the UAW Plan." ECF 39-2 at 10, A.R. 519 (Letter from Knepper's Counsel to VGNA, 4/7/2016).

On or about May 1, 2000, "VGNA purchased Mack" and all Mack employees, including Knepper, became VGNA employees.  ECF 12, ¶ 21; ECF 41-2 at 7.  Then, in 2006, the NBE Plan merged into the VGNA Plan.  ECF 12, ¶ 22; ECF 41-2 at 7.

On July 2, 2013, the UAW and Mack entered into a Memorandum of Understanding ("MOU"), stating that engineering employees at Mack's facility who elected to retire by August 1, 2013, would be paid a special retirement incentive bonus of $15,000.  *See* ECF 39-1 at 220, A.R. 218. The MOU did not otherwise discuss company benefit plans or procedures and rights under such plans. *Id.* at 220-21, A.R. 218-19.

Knepper elected to retire from VGNA as of August 1, 2013, at the age of 62, after 22 years of employment with Mack and then VGNA.  ECF 39-2 at 5, A.R. 249.  In doing so, he accepted an early retirement incentive bonus from VGNA, provided pursuant to the MOU. *See* ECF 41-4 (Affidavit of Eanne Gillon, Director, Benefits Strategy for VGNA), ¶ 5 (noting that Knepper received "payment of one such $15,000 bonus payment"); ECF 12, ¶¶ 56–61.

Thereafter, on August 26, 2013 and September 4, 2013, respectively, Knepper was sent a notification of his rights and election form packages from the UAW Plan as well as the VGNA

Plan. ECF 39-1 at 225-248, A.R. 223-246; ECF 39-2 at 3-43; A.R. 247-287.[3] The notifications expressly advised Knepper that he was required to complete and submit an election package in order to receive his pension benefits. To illustrate, the UAW Plan notice said: "You are entitled to a benefit from the Mack-UAW Pension Plan (the "Plan"). We have prepared the enclosed Benefit Notice and Election Package for you, with information based on a Benefit Commencement Date of 08/01/2013. In order to commence payment of your benefit as of that date, you will need to return your completed package as soon as possible. The benefits shown are based on your current personal information, as reflected in the records of the Plan. ***Please note that the information in this package is valid for only 90 days***." ECF 39-1 at 225; A.R. 223 (emphasis in original); *see* ECF 39-2 at 3, A.R. 247 (same). Further, it provided: "In order to receive your pension benefits, you must complete, sign, and date the **Pension Options Form** and fully complete and return all necessary supporting documents. ***Missing or incomplete information may result in a delay of payment or require a later Benefit Commencement Date***." ECF 39-2 at 3, A.R. 247 (emphasis in original). The notice from VGNA Plan was to the same effect. ECF 39-2 at 3, A.R. 247.

As indicated, the packages were valid for only 90 days. It follows that Knepper was required to submit his packages by November 24, 2013, and December 3, 2013, respectively. It is undisputed, however, that Knepper failed to submit the packages on those dates or anytime thereafter. *See, e.g.*, ECF 42 at 1; ECF 12, ¶ 31.

---

[3] In the Motion, defendant states that the letter from the UAW Plan was sent on August 23, 2013. *See* ECF 41-2 at 8.

Knepper contends that he was given incomplete information as to his available retirement benefits. ECF 12, ¶ 26; ECF 39-3 at 25, A.R. 763; *see* ECF 42 at 2. However, the "Pension Options Form" attached to the letter from the VGNA Plan provided, ECF 39-2 at 6, A.R. 250:

[Y]ou may elect separate optional forms of payment from (2) and (3) below.

2) Mack NBU [*i.e.*, the "Non-Contributory Plan"] Accrued Benefits:

- Defer your Mack NBU Accrued Benefits or
- A lump sum distribution attributable to your Mack NBU benefits or
- An annuity derived from your Mack NBU benefits

3) Contributory Accrued Benefits:

- Defer your Contributory Accrued Benefits or
- A lump sum distribution of your Accumulated Contributions or
- An annuity derived from your Contributory Accrued Benefits

This list was followed by forms that Knepper could use to check off the benefit selection of his choice.

On October 7, 2013, plaintiff wrote to defendants regarding the retirement packages and election forms he had received and requested additional information about the calculation of his benefits. ECF 40-1 at 36-37. Defendants responded to plaintiff's request for additional information by letter on November 1, 2013. ECF 39-2 at 44, A.R. 288-298. The response contained an explanation as to how Knepper's benefits were calculated. The response also included a modified election form, correcting a "discrepancy with the Joint & Survivor Annuity factors." ECF 39-2 at 44-54; 288-298. In particular, the letter stated: "Upon reviewing your Mack Contributory Pension Plan we discovered a discrepancy with the Joint & Survivor Annuity factors. We have revised your pension options form based on the Plan's actuarial assumptions attached." *Id.* at 45, A.R. 289. The response and revised pension options form did not include a deadline for Knepper to submit an

application. But the revised pension benefit form provided: "Please use this form to request pension benefits…." *Id.* at 46, A.R. 290.

Thereafter, by letter of December 2, 2013, Knepper wrote to defendants, seeking additional information. ECF 40-1 at 39. In particular, Knepper asked, *id.*: "Why are you NOT using my years which yield the highest average to determine my Final Average Earnings when calculating my benefit as is stated in the MACK RETIREMENT INCOME PLAN?" (Capitals in original).

A month later, on January 3, 2014, plaintiff emailed the VGNA Human Resources Service Center ("HR Service Center") seeking copies of the "Plan for years dated 1994 and 1995." ECF 40-1 at 40. An individual with the HR Service Center responded to plaintiff's email on February 28, 2014, stating that the requested information would be mailed and a representative would address Knepper's previous questions regarding the calculation of his benefits. ECF 40-1 at 41.

Of relevance here, on March 3, 2014, the UAW Plan wrote to Knepper and provided him with an additional opportunity to submit an election form based on the amended "55% Joint and Survivor annuity option for certain participants." ECF 39-3 at 223; A.R. 733. Further, the UAW Plan stated, *id.*: "We have prepared the enclosed revised Pension Options Forms which reflect the new annuity options. Our records indicate that you have not yet submitted your elections forms to commence benefit effective 08/01/2013. Please use the enclosed revised Pension Options Forms and discard the original Pension Options Forms." However, the letter did not specify a deadline for Knepper to submit his forms.

Nevertheless, Knepper did not submit any benefit forms. ECF 39-3 at 63, A.R. 573; *id.* at 223, A.R. 733. Instead, by letter of March 13, 2014, plaintiff wrote to defendants regarding the "Contributory Retirement portion" of his retirement benefit. ECF 40-1 at 43-44. In that letter, plaintiff reiterated that defendants were using the wrong years to calculate his "Final Average

Earnings." *Id.* at 43; *see also id.* at 83 (requesting copies of relevant plan documents by letter of April 1, 2014).

Then, on June 4, 2014, through counsel, plaintiff wrote to Eanne Gillon, the Director of Benefits Strategy at VGNA, stating, *id.* at 85-86: "Although we find a number of discrepancies and outright errors in some of the calculations provided to [Knepper], the purpose for this writing is to address the calculation of Mr. Knepper's employee contribution amount." *Id.* at 85. Plaintiff's counsel requested that Gillon contact him "so that Mr. Knepper can proceed with election of his benefits which has been delayed due to numerous miscalculations of his benefit[s]." *Id.* at 86. Plaintiff also contacted Gillon regarding his benefits calculation on August 5, 2014, and again, through counsel, on November 25, 2015, and January 15, 2016. *Id.* at 45-47, 56, 61. It is not clear whether defendants responded to these letters.

Thereafter, on April 7, 2016, Knepper, through counsel, pursued an administrative claim as to both his benefit calculation under the NBE Plan and the 34 monthly benefit payments he claims he is due, beginning with the date of his early retirement through his normal retirement date. *See* ECF 39-3 at 10-15, A.R. 520-525. With respect to the VGNA Plan, plaintiff complained that the VGNA Plan improperly calculated his benefit, incorporated from the NBE Plan, by only using wages from 1987 through 1991 to determine his Final Average Compensation. *Id.* at 11, A.R. 521. Notably, those were the years Knepper contributed to the NBE Plan. *Id.* at 13, A.R. 523. In plaintiff's view, however, "Final Average Compensation" should have been derived from the five consecutive years during his career with his highest average wages, which was the period from 2005 to 2009. *Id.* Knepper also claimed that under the Plans he was entitled to thirty-four monthly benefit payments, retroactive from August 1, 2013, through the time the Plans began to pay him. *Id.* at 14, A.R. 524.

Plaintiff's counsel wrote, in relevant part, *id.* at 11, A.R. 521: "Mr. Knepper declined to sign the documents given to him or to choose any of the benefits options on the documents because two key components of the documentation were inaccurate." As noted, one component involved the use of compensation averaging which ended in 1991 for purposes of computing plaintiff's VGNA benefit. The other component was that he supposedly had not been provided with the option of taking the contributory portion of the Contributory Plan benefit, ultimately merged into the VGNA Plan, as a lump sum while taking the non-contributory portion separately in the form of an annuity.

Further, Knepper's attorney said, *id.* at 14, A.R. 524: "I also want to put you on clear notice that Mr. Knepper is entitled to all the benefits he would have received since he retired in August 2013 had he not been given an improper calculation time and time again. This includes his benefits under the UAW Plan; to that end, I have cc'd the UAW Plan on this correspondence. He chose not to take any of the benefits because he feared doing so would jeopardize his right to eventually collect the correct benefit from the Volvo Cash Balance Plan."[4]

By letter of August 5, 2016, the Plans denied the claims. *Id.* at 62, A.R. 572-574 ("Denial Letter"). The Denial Letter explained the basis for the VGNA Plan's benefit calculation.[5] And, as to Knepper's retroactivity claims, the Denial Letter stated, in relevant part, *id.* at 63, A.R. 573 (emphasis added):

> Because you did not submit completed paperwork in the allotted time period, your benefits may not be paid retroactively to 2013. Article IV Section 7 of the Mack-UAW Pension Plan reads as follows:

---

[4] Counsel did not explain why plaintiff could not have completed and submitted the form under protest, so as to timely submit the package while also preserving his objections.

[5] In the earlier Memorandum Opinion, I found that plaintiff did not plead facts sufficient plausibly to allege that VGNA abused its discretion in denying plaintiff's claim that his benefits were improperly calculated. ECF 19 at 29.

"In order to receive any benefit from the Plan, the person entitled to the benefit *must make application to the Board* on a form furnished by the Board for that purpose no earlier than 90 days (or, for benefits commencing on and after January 1, 2008, 180 days) prior to the date the benefit is scheduled to commence."

Similarly, Section 4.4 of the Cash Balance Plan only allows retroactive annuity starting dates in one circumstance, which does not apply in your case. Accordingly, your benefits will commence effective June 1, 2016, your Normal Retirement Date.

On September 30, 2016, Knepper, through counsel, filed an appeal to the "North America Benefits Plan Committee" (the "Committee"). *Id.* at 65-71, A.R. 575-581. Plaintiff again asserted that his benefits had been miscalculated and that he was entitled to retroactive benefits dating to August 1, 2013. But, the appeal did not address any error in the computation of Knepper's Mack/UAW Plan benefit. On January 23, 2017 (*id.* at 244, A.R. 754) and (*id.* at 249, A.R. 759), the VGNA Plan and the UAW Plan rejected plaintiff's appeal. *Id.* at 244, A.R. 754 (VGNA); *id.* at 249, A.R. 759 (UAW Plan).

As to retroactivity, the VGNA Plan asserted that Knepper's failure to return the benefits election forms placed him outside of the limited circumstances under which VGNA's "administrative practice permits . . . retroactive commencement" of benefit payments. *Id.* at 247, A.R. 757. Although the VGNA Plan indicated that Knepper's "benefits may commence effective June 1, 2016, his Normal Retirement Date," it said: "Earlier commencement is prohibited by rules established by this Committee and incorporated by reference in the plan terms." *Id.* at 248, A.R. 758 ; *see also id.* at 249-50, A.R. 759-760 (UAW Plan saying the same).

While Knepper's administrative claims were pending, he reached the age of 65. Thus, he became eligible to receive normal retirement benefits on June 1, 2016. ECF 39-2 at 5, A.R. 249; ECF 12, ¶ 65. At that point, Knepper applied for and elected normal retirement benefits with both

the VGNA Plan and the UAW Plan, paid in the form of joint and survivor annuities. He has continued to receive normal retirement benefits since that time. ECF 41-2 at 5.

Additional facts are included, *infra*.

## II.     Standard of Review

### A. Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law.  *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.* at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647,

658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *accord Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such

as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).

That said, "a party's 'self-serving opinion ... cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc*., 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc.,* 370 F.3d 423, 433 (4th Cir. 2004)).  In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987); *Harris v. Home Sales Co*., 499 F. App'x 285, 294 (4th Cir. 2012).

## B.  ERISA

### 1.  ERISA Generally

ERISA was "enacted to protect the interests of participants in employee benefit plans and their beneficiaries…."  *Marks v. Watters*, 322 F.3d 316, 322 (4th Cir. 2003); *see* 29 U.S.C. § 1001(b); *Peters v. Aetna Inc.*, __ F.3d__, 2021 WL 2546412, at *5 (4th Cir. June 22, 2021).  It does so, *inter alia*, by setting "'various uniform standards [for employee benefit plans], including rules concerning reporting, disclosure, and fiduciary responsibility.'" *Retail Industry Leaders Assoc. v. Fielder*, 475 F.3d 180, 190 (4th Cir. 2007) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983)).

In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004), the Supreme Court said: "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.  To this end, ERISA includes expansive pre-emption provisions, which are intended to ensure that employee plan benefit regulation would be 'exclusively a federal concern.'"  (Citations omitted). *See also New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514

U.S. 645, 646 (1995) (explaining that "[t]he basic thrust of the pre-emption clause was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans"); *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 46 (1987) (recognizing "the reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans as ERISA's crowning achievement," and noting that the legislation's sponsors "emphasized both the breadth and importance of the preemption provision" to "establish pension plan regulation as exclusively a federal concern.") (internal quotation marks and citations omitted). Moreover, courts "'must enforce plain and unambiguous statutory language in ERISA,' as in any statute, 'according to its terms.'" *Intel Corp. Investment Policy Committee v. Sulyma*, __U.S.__, 140 S. Ct. 768, 776 (2020) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)); *see Jenkins v. Montgomery Indus., Inc.*, 77 F.3d 740, 743 (4th Cir. 1996) (stating that general principles of contract law require that federal courts enforce "the plan's plain language in its ordinary sense") (internal quotation marks and citations omitted).

Since its inception in 1974, ERISA has defined "employee pension benefit plan" and "pension plan" to refer to any type of plan or program that "provides retirement income to employees" or "results in a deferral of income by employees for periods extending to the termination of covered employment." 29 U.S.C. § 1002(2)(A). Under ERISA, "[e]very employee benefit plan" must be "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), "specify[ing] the basis on which payments are made to and from the plan." *Id.* § 1102(b)(4). Further, the plan must be administered "in accordance with the documents and instruments governing the plan...." *Id.* § 1104(a)(1)(D). *See Kennedy v. Plan Administrator For DuPont Savings and Investment Plan*, 555 U.S. 285, 300 (2009).

The Supreme Court underscored in *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013): "'The plan, in short, is at the center of ERISA'. . . [O]nce a plan is established, the administrator's duty is to see that the plan is 'maintained pursuant to [that] written instrument.'… This focus on the written terms of the plan is the linchpin of a 'system that is [not] so complex that administrative costs, or litigation expense, unduly discourage employers from offering [ERISA] plans in the first place' . . . . For that reason, we have recognized the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims." (Citations omitted; alterations in *Heimeshoff*); *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (recognizing that ERISA's statutory scheme "is built around reliance on the face of written plan documents"); *Boyd v. Metro. Life Ins. Co.*, 636 F.3d 138, 140 (4th Cir. 2011) (recognizing that "plan administrators must act 'in accordance with the documents and instruments governing the plan . . .'") (citation omitted).

### 2. Judicial Review

Under ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B), "a plan participant may bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006) (quoting 29 U.S.C. § 1132(a)(1)(B)). Knepper alleges that he is entitled to recover under § 502(a)(1)(B) for defendants' failure to provide him with the benefits "to which he is entitled…" ECF 12, ¶¶ 76-81.

Ordinarily, "a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see Metropolitan Life Ins. Co.*

*v. Glenn*, 554 U.S. 105, 111 (2008); *Woods v. Prudential Ins. Co. of Am.*, 528 F.3d 320, 322 (4th Cir. 2008); *Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 340-41 (4th Cir. 2000) (setting out abuse of discretion as the appropriate standard of review of a discretionary decision by a plan administrator or fiduciary). When a plan vests the administrator with discretionary authority to determine eligibility, the administrator's decision is reviewed for abuse of discretion. *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010).

If the abuse of discretion standard applies, it "requires a reviewing court to show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008). In other words, the court should not "disturb such a decision if it is reasonable." *Booth*, 201 F.3d at 342. Nor may the court substitute its own judgment for that of the administrator. *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010); *see Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir. 1993) (noting that the Fourth Circuit is averse to "the transfer of the administration of benefit and pension plans from their designated fiduciaries to the federal courts").

In *Booth*, 201 F.3d 335, the Fourth Circuit identified eight nonexclusive factors for courts to consider in evaluating whether a plan administrator abused its discretion: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard

relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have. *Id.* at 342–43.

"Generally, consideration of evidence outside of the administrative record is inappropriate when a coverage determination is reviewed for abuse of discretion." *Helton v. AT&T, Inc.*, 709 F.3d 343, 353–54 (4th Cir. 2013) (citing *Sheppard & Enoch Pratt Hospital, Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994)). But, "a district court may consider evidence outside of the administrative record on abuse of discretion review in an ERISA case when such evidence is necessary to adequately assess the [abuse of discretion] factors and the evidence was known to the plan administrator when it rendered its benefits determination." *Helton*, 709 F.3d at 356. And, under the principles of agency law, "an ERISA plan administrator can be charged with knowledge of information acquired by its employees in the scope of their employment and the contents of its books and records." *Id.*

### III.    Discussion

### A.

Defendants claim that both the VGNA Plan and the UAW Plan give the plan administrators "broad discretion to construe the terms of the plans." ECF 41-2 at 13. Thus, they maintain that the administrators' decision is reviewed "only for" abuse of discretion. Plaintiff does not dispute this contention.

The VGNA Plan provides that it is managed and controlled by the "North American Benefits Committee" (the "Committee"), which "shall have full discretionary authority to take all actions and to make all decisions necessary or proper to carry out the administration of the Plan. The determination of the Committee as to any question involving the general administration and

interpretation of the Plan shall be final, conclusive and binding. Any such determinations by the Committee shall be given the fullest deference permitted by law." ECF 39-2 at 130, A.R. 374.

Similarly, the UAW Plan provides, *id.* at 232, A.R. 476: "The Board shall have discretionary authority and jurisdiction to pass upon all questions concerning the application and interpretation of the provisions of the Plan which it is empowered to administer. The Board shall decide all such questions in accordance with the terms of the Plan, and all such decisions of the Board shall be final and binding upon the Company, the Union, the employees, and the beneficiaries or claimants under the Plan . . ."

Thus, both plans grant the administrators broad discretionary authority to interpret and administer the plan provisions. Such language invokes application of the abuse of discretion standard of review. *See, e.g., Stanley v. Metropolitan Life Ins. Co.*, 312 F. Supp. 2d 786, 789 (E.D. Va. 2004) (applying abuse of discretion standard because the Plan "expressly grants [the Administrator] discretionary authority to determine a claimant's entitlement to benefits").

The evidence that plaintiff submitted to the Court in the "Supplement to Administrative Record" was not part of the Administrative Record. However, as noted, plaintiff does not dispute that the abuse of discretion standard applies. Nor does he argue that the administrators of the Plans abused their discretion with respect to his claims. *See* ECF 42. Rather, it appears that plaintiff asks the Court to consider the evidence outside of the normal administrative framework to support his claim for equitable tolling. Thus, I shall consider the supplemental evidence to the extent it is relevant to plaintiff's claim for equitable tolling, not in reviewing the administrators' decision-making.

**B.**

Defendants argue that Knepper has no claim for retroactive early retirement benefits under either the VGNA Plan or the UAW Plan. ECF 41-2 at 14. According to defendants, the terms of both plans are unambiguous in precluding Knepper from receiving retroactive benefits. *Id.* at 12-24. Moreover, they maintain that equity does not provide any basis for retroactive benefits. *Id.* at 26.

Plaintiff does not dispute that he is not entitled to retroactive benefits pursuant to the unambiguous language of the plans. *See* ECF 42. But, he urges the Court to apply the doctrine of equitable tolling to the internal deadlines set by both of the Plans, so as to allow him to seek retroactive benefits. *Id.* at 1-2, 7.

Using the standard of review as set out above, the Court will first consider whether the administrators' decisions to deny retroactive benefits to Knepper constituted an abuse of discretion. Second, the Court will consider the applicability of equitable tolling.

William Mischell is a senior partner at Mercer (U.S.), Inc. ("Mercer"). Mercer is an international benefits consulting company that provides retirement consulting services to the VGNA Plan and the UAW Plan. Defendants consulted Mischell regarding Knepper's benefits after plaintiff submitted his appeal to the Committee in 2016. ECF 41-5 (Affidavit of Mischell), ¶¶ 1, 2. According to Mischell, the administrators of the Plans relied on the terms of the Plans that were in effect in April 2016 to determine if Knepper was entitled to retroactive benefits. *Id.* ¶ 9.

The VGNA Plan states, in relevant part, ECF 39-2 at 80, A.R. 324 (emphasis added):

**4.4   Retirement Income at Normal, Early or Postponed Retirement**

A participant who retires on a Normal, Early or Postponed Retirement Date shall receive an amount of Retirement Income equal to his Cash Balance Account at his Annuity Commencement Date converted to a Retirement Income in accordance with the applicable Cash Balance Conversion Factors

and Procedures specified in Appendix A as of his Annuity Commencement Date.

If a Participant shall retire on a Normal, Early or Postponed Retirement Date, the Participant shall, **upon written application**, **be entitled to establish an Annuity Commencement Date** which shall be no later than the April 1st following the calendar year of his attainment of age 70 ½ and not earlier than the first day of any month coincident with or following his Retirement Date. Notwithstanding the preceding sentence, **if a Participant's Retirement Income calculated under the terms of the Plan as of December 31, 1997**, and as if such Participant had terminated employment on such date, and payable in the form of a lump sum, exceeds his Cash Balance Account, and he defers commencement beyond the age at which the December 31, 1997 Plan benefit is unreduced, such Participant shall be permitted to elect to receive his benefit as of the date at which his benefit is unreduced. **Such date shall be treated as a Retroactive Annuity Starting Date,** as described in and subject to the conditions set forth in Section 6.3(C).

Pursuant to Section 6.3(A), election of whichever benefits are desired is to be made by the participant by written application in response to a notice and explanation of the available options. It states, ECF 39-2 at 112, A.R. 356 (emphasis added):

To become effective, the election of an option must be submitted to the Committee; must be made on a form provided by the Committee; must contain such information as the Committee requires; must be acknowledged by the Committee and must be complete in all respects. **An option may be elected by a Participant after he receives the notice…at any time within one hundred eighty (180) days of his Annuity Commencement Date….**

Thus, the VGNA Plan explicitly requires completion of a benefit election form by the plan participant in order to commence benefits. And, the benefit option must be selected within 180 days of the Annuity Commencement Date. The VGNA Plan identifies one exception to the requirement for completion of the benefit election form, for participants whose benefits were "calculated under the terms of the Plan as of December 31, 1997." However, Knepper was not a participant in the VGNA Plan as of December 1997 because VGNA did not purchase Mack until 2000. Thus, the retroactive starting date referred to in Section 4.4 is inapplicable here.

The UAW Plan also requires a written application and election of benefits. In Article IV, Section 7, titled "Applications," the UAW Plan provides that any participant seeking benefits must apply for them in writing on a prescribed form. It states, ECF 39-2 at 187, A.R. 431:

> In order to receive any benefit from the Plan, the person entitled to the benefit must make application to the Board on a form furnished by the Board for that purpose no earlier than 90 days (or for benefits commencing on and after January 1, 2008, 180 days) prior to the date the benefit is scheduled to commence.

For early retirement benefits, "the benefit will commence on the date elected by the employee on a form furnished by the Board for that purpose." *Id.* at 190, A.R. 434. And, like the VGNA Plan, the UAW Plan creates an exception, granting the Plan discretionary authority to provide a participant with benefits before the participant has provided the required written application.

Article VII, Section 11 of the UAW Plan states, ECF 39-2 at 239, A.R. 483:

> (g) The written explanation described in Subsection (a) may be provided to the Participant after his "annuity starting date" (as defined in Treas. Reg. §1.410(a) (20), Q & A-10). In such a case, the rules of Subsection (i) shall apply and the Participant's actual benefit commencement shall be after this annuity starting date.

Treasury Regulation § 1.410(a), referenced by the VGNA Plan, is codified in 26 C.F.R. § 1.417(e)-1. It provides, among other things: "A defined benefit plan is not required to provide for retroactive annuity starting dates. If a plan does provide for a retroactive annuity starting date, it may impose conditions on the availability of a retroactive annuity starting date…." Further, the rules of Subsection (i), governing any discretion of the Plans to allow for such a retroactive start date, provides, *id.*: "The rules for electing an optional form of benefit shall be applied in a uniform and nondiscriminatory manner." In sum, the UAW Plan gave the administrators wide discretion in determining the applicability of retroactive benefits.

In the initial election packages that were sent to Knepper in 2013, he was explicitly advised of these requirements and the deadlines to submit his application. *See* ECF 39-1 at 225; A.R. 223; ECF 39-2 at 3, A.R. 247. As discussed below, the same procedures were again discussed in the Denial Letter and the responses to Knepper's appeal.

On August 5, 2016, in a consolidated response, the VGNA Plan and the UAW Plan explained the basis for denial of Knepper's claim for retroactive benefits, referencing Section 4.4 of the VGNA Plan and Article IV, Section 7 of the UAW Plan. ECF 39-3 at 63, A.R. 571. They said, *id.* (emphasis added):

> Mr. Keating's [*i.e.*, plaintiff's counsel] letter also requested that your benefits be paid retroactive to your originally requested benefit commencement date of August 1, 2013. Volvo is denying this claim. You received a benefit election package subsequent to your July 31, 2013, termination of employment, and a revised election package in November 2013. **Because you did not submit completed paperwork in the allotted time period, your benefits may not be paid retroactively to 2013**. Article IV Section 7 of the Mack-UAW Pension Plan reads as follows:
>
> "In order to receive any benefit from the Plan, the person entitled to the benefit must make application to the Board on a form furnished by the Board for that purpose no earlier than 90 days (or, for benefits commencing on and after January 1, 2008, 180 days) prior to the date the benefit is scheduled to commence."
>
> Similarly, Section 4.4 of the Cash Balance Plan [*i.e.*, the VGNA Plan] **only allows retroactive annuity starting dates in one circumstance, which does not apply in your case.** Accordingly, your benefits will commence effective June 1, 2016, your Normal Retirement Date.

Thereafter, the Plans responded to Knepper's appeal separately and elaborated on the reason Knepper was not eligible for retroactive benefits. *See* ECF 39-3 at 244-247, A.R. 754-758 (VGNA Plan); *id.* at 249-250, A.R. 759-60 (UAW Plan). The VGNA Plan stated, in relevant part, ECF 39-3 at 247, A.R. 757:

> [Y]ou have renewed the Participant's claim for payment of his benefit retroactive to August 1, 2013. In support of this request, you have quoted the terms of a retirement incentive bonus. While this offer may have mentioned eligibility for

benefits under the [VGNA] Plan upon termination of employment, the offer did not change the plan term.

Section 6.3(C) of the [VGNA] Plan anticipates that a participant may apply for payment as of a benefit calculation date that precedes the date on which he receives a notice describing his payment election rights (i.e., the election package), subject to 'conditions adopted by the Committee.' Pursuant to authority delegated by the Committee for this purpose, the Plan's administrative practice permits such retroactive commencement dates only in cases where:

- there is a brief administrative delay between the benefit calculation date and the date the package is sent,

- a new package is provided that reflects any adjustment due to revised data, a supervening amendment, or a benefit calculation irregularity, or

- a participant has deferred payment beyond the date on which he could commence payment of benefits unreduced.

The benefit packages provided to the Participant in August and September of 2013 fall into the first category, and the packages provided on November 1, 2013 and March 3, 2014 fall into the second, assuming that the Participant had responded by the deadlines stated therein (which he failed to do). Under the third category, the Participant is entitled to payment calculated as of June 1, 2016 because payment has been deferred beyond his normal retirement age. Moreover, any limited right to elect retroactive payment is subject to any conditions established by the Committee. Accordingly, the Participant's benefits may commence effective June 1, 2016, his Normal Retirement Date. Earlier commencement is prohibited by rules established by the Committee and incorporated by reference in the plan terms.

The UAW Plan's response is almost identical, ECF 39-3 at 249-250, A.R. 759-760:

Subject to limited exceptions noted below, legally, a participant cannot commence payment more than 180 days after receiving a notice describing his payment election right (i.e., the election package). In this case, the Plan sent the Participant an election package for benefits calculated with a payment commencement date of August 1, 2013, but he failed to return the completed forms within the election period. His failure to do so was not due to any fault on the part of the Plan nor its representatives.

Because the Participant did not return his election package in a timely manner, the package expired and he would require a new one to commence his benefits. Article VII, Section 11 of the Plan provides in paragraphs (g) and (i) thereof that a participant may apply for payment as of a benefit calculation date that precedes the date on which he receives the election package, subject to the Plan's administrative

23

rules for election payments. For this purpose, the applicable rules permit such retroactive annuity starting dates only in cases where:

- there is a brief administrative delay between the benefit calculation date and the date the package is sent,

- a new package is provided that reflects any adjustment due to revised data, a supervening amendment, or a benefit calculation irregularity, or

- a participant has deferred payment beyond the date on which he could commence payment of benefits unreduced.

The situations described in the first two categories above do not apply in this case. Under the third category, the Participant may elect a retroactive annuity starting date as of June 1, 2016 (his normal retirement date). Because earlier commencement is prohibited by the Plan's administrative rules, which are incorporated by reference in the Plan terms, the claim for payment retroactive to August 1, 2013 is denied.

In sum, the Plans concluded that Knepper's claim for retroactive benefits was barred by his failure to make a timely election of benefits after receiving election packages. And, the letters demonstrate that, in denying Knepper's claims, the Plans relied on the text of each plan and the limited discretionary authority to grant retroactive benefits.

Moreover, in determining the appropriate response to Knepper's claims, Mischell explains that he consulted with the team "that had been responsible for helping to administer the Plans to confirm what the administrative practice was for permitting…retroactive commencement of payments under the Plans." ECF 41-5, ¶ 29. Mischell avers that he was "informed that the administrative practice was to allow retroactive annuity starting dates in limited circumstances, only when there had been some defect in the advance delivery of the explanatory election package." *Id.* Otherwise, the "only other circumstance in which…the Plans provided for a Retroactive Annuity Starting Date was as set forth in Section 4.4 of the VGNA Plan concerning participants as of December 31, 1997." *Id.* ¶ 30. Further, the administrators at both Plans were not aware of "any situation in which any Participant in either the VGNA Plan or the UAW Plan had

been permitted, after being notified of his or her early retirement benefits and provided with the necessary forms to elect them, and after failing to provide a timely election under them, to elect them retroactively years later when they became eligible for normal retirement benefits." *Id.* ¶ 31.

Knepper does not dispute that he did not submit the election forms for his early retirement benefits. ECF 42 at 1. Nor does he contend that the terms of either plan are ambiguous or that they were misinterpreted by the administrators. *See generally* ECF 42.

As indicated, the decision of the administrators of the Plans as to the amount of benefits to which plaintiff was entitled, as well as enforcement of the time limitations set out in both Plans, are afforded deference. Because the denials adhered to the plain terms of the Plans, the Plans did not abuse their discretion. It follows that the Court has no authority to overrule the benefit determinations. *See Eaves*, 514 F.3d at 325-26 ("Where an ERISA administrator rejects a claim to benefits on the strength of substantial evidence, careful and coherent reasoning, faithful adherence to the letter of ERISA and the language in the plan, and a fair and searching process, there can be no abuse of discretion—even if another, and arguably a better, decision-maker might have come to a different, and arguably a better, result.").

Nevertheless, plaintiff urges the Court to apply the doctrine of equitable tolling to the "internal deadlines set by Defendants and missed by Plaintiff." ECF 42 at 1. To support his argument, plaintiff contends that he "diligently pursued his claims for benefits," but defendants "provided him with false, misleading, or no, information on several occasions." *Id.* at 1-2, 7. Thus, he asserts that "equitable tolling should apply." *Id.*

Defendants counter that plaintiff's equitable tolling argument fails for three reasons. First, they assert that equitable tolling "has no application for purposes of adjusting his annuity starting dates…and granting him substantive rights of retroactive benefits." ECF 43 at 2. Second, they

posit that the Court would "violate the prescribed procedure for reviewing benefit determinations under ERISA" if it applied equitable tolling to the Plans' internal deadlines. *Id.* Third, they maintain that, "even if equitable tolling were available to him, Knepper cannot begin to meet the onerous burden required for its application." *Id.*

Equitable tolling is a rare remedy that "allow[s] for exceptions to the strict enforcement of deadlines" and "restore[s] a claimant's right to review even though she otherwise would be time-barred." *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005). A litigant is entitled to equitable tolling if: (1) he "'pursu[ed] his rights diligently,'" and (2) "'some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)) (alteration by this Court); *see Edmonson v. Eagle National Bank*, 922 F.3d 535, 548 (4th Cir. 2019); *Battle v. Ledford*, 912 F.3d 708, 718 (4th Cir. 2019). But, as the Fourth Circuit has stated, equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)); *see Irwin v. Dep't of Veteran's Affairs*, 498 U.S. 89, 96 (1990) (noting that the doctrine of equitable tolling is to be applied "sparingly"); *Hutchinson*, 209 F.3d at 330 (noting that equitable tolling "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes").

Courts in this Circuit generally apply equitable tolling in a narrow set of situations, including: (1) "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *Gayle*, 401 F.3d at 226 (internal quotation marks

omitted); (2) "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the limitations period," *id.* (internal quotation marks omitted); or (3) where "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Hutchinson*, 209 F.3d at 330.

To my knowledge, the Fourth Circuit has never extended the doctrine of equitable tolling to time limits specified in ERISA plan provisions. *See Estate of Spinner v. Anthem Health Plans of Va.*, 388 F. App'x 275, 280 n. 5 (4th Cir. 2010) ("While this Court has held that "[e]quitable tolling, while rare, does allow for exceptions to the strict enforcement of deadlines," *see Gayle v. United Parcel Service, Inc.*, 401 F.3d 222, 226 (4th Cir. 2005), we have not applied the principle to toll ERISA deadlines."); *see also Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002) ("[W]e have never squarely held that [equitable tolling] applies to time limits that are specified in plan provisions."). In fact, in *Gayle*, 401 F.3d 222, the Court concluded that the plaintiff was not entitled to equitable tolling even when plaintiff's attorney negligently failed to file an administrative appeal to an ERISA benefits plan within the 180-day limitation period. *Id.* at 255-57.

To be sure, other courts "have found that under the appropriate circumstances, the deadline to apply for benefits under ERISA may be tolled…." *Estate of Spinner*, 388 F. App'x at 280 n. 5. But, those cases have involved situations where applicants were prevented from filing claims or obtaining *review of an administrator's decision*, not where they failed to submit an initial application for benefits, as in this case. *See, e.g., Veltri v. Building Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) (applying equitable tolling to plaintiff's failure to file a timely claim because Fund failed to fully comply with regulatory notice requirements); *Tiger v. AT & T Techs. Plan for Employees' Pensions, Disability Benefits*, 633 F. Supp. 532, 534 (E.D.N.Y. 1986)

(allowing plaintiff time to pursue discovery to establish the elements of his claim for equitable estoppel for failing to appeal the denial of his claim by the deadline); *see also Barrett v. Principi*, 363 F.3d 1316, 1318–21 (Fed. Cir. 2004) (mental illness may justify tolling the 120–day appeal period under certain circumstances); *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511–14 (2d Cir. 2002) (remanding for determination at district court whether mental illness impaired timely request for review in ERISA case). Knepper cites no authority permitting equitable tolling in the context of a claim to compel a benefit plan to grant retroactive benefits under ERISA.

The Second Circuit's ruling in *Garcia Ramos v. 1119 Health Care Emps. Pension Fund*, 413 F.3d 234 (2d Cir. 2015), *cert. denied*, 546 U.S. 1150 (2016), is instructive. There, the governing plan provided for disability pension benefits to commence "the first day of the month in which the payment of the Participant's Social Security disability benefits commence(d), but no earlier than two (2) years prior to the date of the filing of the application for the Disability Pension Benefit with the Fund Office." *Id.* at 236. The plaintiff had been awarded benefits retroactive to two years before the date she applied for them. But, she claimed that she should have received benefits retroactive to the date she was awarded her social security benefits, arguing that "the doctrine of equitable tolling should be applied to her case because she 'has a very significant mental disorder which precluded her from filing for disability benefits with the Fund.'" *Id.* at 236 (internal citation omitted).

The Fund rejected the plaintiff's argument, asserting that "equitable tolling was inapplicable because …[the Fund's filing] rule is not a procedural rule akin to a statute of limitations (i.e., an absolute bar to receiving benefits under the Plan), but a substantive rule

governing the amount of benefits payable to a Plan participant.'" *Id.* at 236. The district court found the Fund's reasoning to be reasonable and a proper exercise of discretion.

The Second Circuit affirmed, stating, *id.* at 238 (emphasis added):

> Even assuming that equitable tolling does apply in such a context, plaintiff-appellant is not seeking tolling of any time limit. She is not seeking relief from a limitations period or some other procedural provision that poses a complete bar to benefits or to review. Section 8.1 of the Plan does not set forth a statute of limitations, but, rather, provides for the "payment commencement date" of the disability pension benefit, designated as "the first day of the month in which the payment of the Participant's Social Security disability benefits commence(d), but no earlier than two (2) years prior to the date of the filing of the application for the Disability Pension Benefit with the Fund Office." Accordingly, section 8.1 is **not subject to traditional principles of equitable tolling**…. In *Chapman* and the related cases cited by plaintiff-appellant, the applicants were prevented from filing claims or obtaining review of an administrator's decision….That did not occur here. **Plaintiff-appellant's claim was found to be timely, benefits were awarded, and she was afforded review of the administrator's decision**. **She is merely seeking additional retroactive benefits.** While we do not discount that some inequities may arise from the Plan's determination of the amount of benefits to which a claimant is entitled, **equitable tolling is not the vehicle for remedying such inequities on these facts.**

Similarly, Knepper's administrative claim, appeal, and this lawsuit have not been rejected as untimely and he was afforded review of the administrators' decisions. Rather, he seeks tolling of an application date that would trigger retroactive benefit payments. In other words, Knepper asks the Court to apply the doctrine of equitable tolling to the internal payment commencement deadlines set and administered by the Plans. But, these provisions are "not subject to traditional principles of equitable tolling." *Id.* And, as noted, Knepper did not lose out on his rights to normal retirement benefits. Thus, as in *Garcia Ramos*, "equitable tolling is not the vehicle for remedying" any inequities that may exist with respect to Knepper's claims.

Moreover, even assuming the Plans' internal deadlines were subject to equitable tolling, plaintiff has not met the high bar necessary to invoke it. For instance, plaintiff claims that defendants provided him with confusing and misleading information that made him hesitant to

submit his election forms. ECF 42 at 1-2. However, even assuming that the letters sent from the Plans were confusing, plaintiff does not allege that they were so confusing as to constitute active inducement to cause plaintiff to miss the filing deadlines. Instead, it was plaintiff's decision to submit his election forms well after the deadlines. *See Stafford v. Wal-mart Stores, Inc., Associates' Health and Welfare Plan*, 2:10-cv-01443-DCN, 2011 WL 4368534, at *4 (D. S.C. Sept. 10, 2011) (refusing to apply equitable tolling to ERISA claim where plaintiff alleged that "defendant provided confusing and misleading documents causing him to miss the 180 day filing limitation"). "Mistakes and misinterpretations of reasonably clear policy language do not amount to extraordinary circumstances." *Id.* at *5. Moreover, a "lawyer's mistake," does not constitute an extraordinary circumstance that would justify equitable tolling. *Hutchinson*, 209 F.3d at 330.

Finally, Knepper claims that "defendants failed to correctly recalculate [his] monthly benefit for his UAW plan." ECF 12, ¶ 73. Defendants posit that this claim fails due to plaintiff's failure to exhaust his administrative remedies and give the Plan an opportunity to consider and decide the claim. ECF 41-2 at 31 (citing *Makar v. Health Care Corp. of Mid-Atl.*, 872 F.2d 80, 82 (4th Cir. 1989)). Indeed, there is nothing in the Administrative Record as to alleged miscalculations under the UAW Plan. Rather, Knepper's only administrative claim as to the UAW Plan relates to his claim for 34 months of retroactive payments. *See* ECF 39-3 at 10-16, A.R. 520-26; id. at 65-71, A.R. 575-81.

Plaintiff also fails to address this claim in the Opposition. Therefore, he seems to have abandoned the contention. *See Stenlund v. Marriot Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (same).

## IV.     Conclusion

For the aforementioned reasons, defendants are entitled to summary judgment as to both of the remaining claims under Count I. Therefore, I shall grant the Motion (ECF 41).

A separate Order follows.

Date:   June 30, 2021                                                   _____/s/_____
                                                                                    Ellen L. Hollander
                                                                                    United States District Judge